IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Trasatti,               :
            Petitioner      :
                         :
     v.                  :  No. 698 C.D. 2021
                         :  SUBMITTED: November 5, 2021
City of Chester (Workers'      :
Compensation Appeal Board),  :
           Respondent    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                             FILED: February 1, 2022

Michael Trasatti (Claimant) petitions for review of the Workers' Compensation Appeal Board's (Board) May 25, 2021 Order, which affirmed the June 26, 2020 Decision and Order of the Workers' Compensation Judge (WCJ) granting the City of Chester's (Employer) petition to suspend Claimant's workers' compensation (WC) benefits, and directing Claimant to reimburse Employer for past benefits. After Claimant was awarded a third-party settlement for the 2011 injury that occasioned his disability benefits, Employer argued that it was entitled to subrogation of the recovery as reimbursement for its disability payments. Following several hearings at which Claimant neither testified nor offered evidence, the WCJ found in favor of Employer. On appeal, Claimant maintained for the first time that his disability payments were improperly classified as WC payments but should have been considered as payments under the state's Heart and Lung Act,[1] and therefore

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

exempt from subrogation. The Board declined to consider that issue since it had not been timely raised, and agreed with the WCJ's conclusion. We affirm.

## I. Background

Claimant worked in Employer's Police Department as a supply officer. On November 23, 2011, during the course of his employment, Claimant slipped and fell while exiting his vehicle at a supply warehouse. As a result of this fall, Claimant sustained a partial tear of his left rotator cuff and strains and sprains to his lumbar and left elbow. WCJ Decision, Findings of Fact (FOF) ¶ 1. To repair those injuries, Claimant underwent shoulder surgery in May 2013. He never returned to work. Reproduced Record (R.R.) at 105.

From May 2013 until January 15, 2014, Employer paid Claimant disability benefits pursuant to the terms of the Heart and Lung Act.[2] *Id.* at 95. After January 15, 2014, Employer discontinued Heart and Lung benefits and began issuing Claimant payments pursuant to the Workers' Compensation Act (the Act).[3] *Id.* at 85-86. When the WC payments were terminated over four years later,[4] Employer had

---

[2] The Heart and Lung Act provides public safety officers with their full salary while they recover from temporary, work-related ailments. Though similar in purpose, WC benefits and Heart and Lung benefits differ in their legal ramifications. While an employer may seek reimbursement of WC expenses through subrogation of a beneficiary's third-party recovery, it may not seek it for Heart and Lung payments. *Oliver v. City of Pittsburgh*, 11 A.3d 960, 966 (Pa. 2011).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[4] Claimant's WC benefits had been suspended in 2018 as the result of a separate dispute with Employer. In March 2016, Employer received a medical expert's opinion that Claimant was fit to return to work. Employer offered Claimant a new position, which it characterized as "light duty," and offered his pre-injury salary. R.R. at 33. Claimant declined. At the end of that year, he retired and began collecting a pension, which he maintains was made necessary by his inability to work. *Id.* at 105. Employer filed a petition to suspend his WC payments, calling Claimant's retirement "voluntary" and arguing that his non-acceptance of the light-duty position lacked a **(Footnote continued on next page…)**

2

disbursed over $300,000 in disability benefits. *Id.* At some point prior to May 2, 2018,[5] Claimant negotiated a settlement with a third-party tortfeasor in the amount of $433,000. *Id.* at 85. Employer maintained that it is entitled to subrogation of the recovery as reimbursement for the WC portion of its payments to Claimant. Claimant's counsel put the settlement monies in escrow and advised Employer's counsel that he believed there would be an "issue" with subrogation, given that Claimant had also received Heart and Lung benefits. *Id.* at 83.

In pursuit of its alleged subrogation rights, Employer sent repeated requests to Claimant's counsel for information about the third-party settlement. However, Claimant failed to respond to these requests. Employer filed a petition to suspend Claimant's benefits on December 31, 2018. *Id.* at 7. In the petition, Employer also claimed a total subrogation lien of $318,123.99 as of May 2, 2018, the date when it learned of the settlement agreement. *Id.* at 88. Omitted from the total were Claimant's $9,411.39 in Heart and Lung benefits. Of the total, Employer argued that it was entitled to recover up to $297,080.50: $182,204.49 to be awarded upfront, plus a 57.3% reduction in any future weekly benefits until the remaining balance of $114,876.01 is paid off.

Over the following year, the WCJ held three hearings pertaining to Employer's petition to suspend benefits and claim for subrogation. In support of its claim, Employer offered into evidence the following documents: an e-mail sent by Employer's counsel to Claimant's counsel which contained the third-party

medical justification. *Id.* at 34. The WCJ agreed with Employer, and on August 28, 2019, the Board affirmed the WCJ. *Id.*

[5] May 2, 2018, was the date when Employer learned about the third-party settlement. The record does not indicate precisely when Claimant reached a settlement agreement with the third party, since Claimant has never said when it was reached. The settlement statement eventually disclosed to Employer and the WCJ was undated. *Id.* at 91.

settlement agreement itself; earlier e-mail messages sent by Employer's counsel to Claimant's counsel requesting information regarding the settlement agreement; a printout of Employer's insurer's history showing the date and amount of each disbursement to Claimant and his counsel; and a message from the insurer to Employer's counsel stating the exact amount of Heart and Lung benefits paid to Claimant. *Id.* at 38.

At those hearings, Claimant offered no testimony or other evidence. At the first scheduled hearing on January 15, 2019, Employer's counsel advised the WCJ that Claimant had not yet disclosed any information regarding the settlement with the third party. The WCJ asked Claimant's counsel, Lauren Donati, how much time was needed to share that information with Employer. Ms. Donati responded that she was "covering for the attorney of record, Robert DeLuca," and admitted that she could not "really speak for [DeLuca] with regard to" that issue. "I wasn't given much information regarding today's hearing, so . . . I can't really speak to whether he would want to submit testimony or not," she explained. *Id.* at 52-53. At the next hearing on June 13, 2019, Ms. Donati again clarified that she was "here on behalf of the attorney of record, Robert DeLuca" and that she was "not necessarily aware of what was going on . . ." *Id.* at 65. Ms. Donati's request for 30 days to disclose settlement information was granted by the WCJ. *Id*. (It would be several months before Claimant actually disclosed the third-party settlement information to Employer.) At a third hearing, on November 14, 2019, neither Claimant nor his attorney appeared, and, once again, no evidence was presented on his behalf. *Id.* at 73. Still without any word from Claimant or his counsel, the WCJ found that Employer met its burden of proof that it was entitled to subrogation of the settlement earnings, and granted its requested relief on June 26, 2020. FOF ¶¶ 7-9.

4

Three days after the WCJ issued his decision, Claimant's counsel sent the WCJ an *unfiled* "Brief in Support of [Claimant's] Answer to the Suspension Petition," as well as a letter addressed to the WCJ in which he indicated surprise that a brief he wrote the previous month had never been filed. R.R. at 134. Counsel requested that the WCJ reconsider his decision with the brief in mind. There is no indication in the record that the WCJ ever received or acknowledged the letter or the unfiled brief. There is also no indication that Employer's counsel was sent a copy of the brief or letter that Claimant sent to the WCJ .

On July 13, 2020, Claimant refashioned the unfiled brief into an appeal to the Board. *Id.* at 21. In this appeal, Claimant asserted that his Heart and Lung benefits had been wrongfully terminated since he had been deprived of his right to a hearing before the benefits were terminated. *See Williams v. Dep't of Corr.*, 642 A.2d 608 (Pa. Cmwlth. 1994) (holding that terminating Heart and Lung benefits without a hearing violates the recipient's due process rights). Claimant asserted that his subsequent WC benefits should therefore be classified as Heart and Lung benefits; and that, accordingly, Employer had no subrogation rights over them. In the alternative, Claimant argued that Employer should be barred from collecting a lien amount any higher than $258,565.64. *Id.* at 23. That figure originates in a December 2016 letter from Employer's insurer to Claimant's counsel, which informed Claimant of the lien total as of the letter's date. According to Claimant's counsel, he had relied on that figure during settlement negotiations, and since the WCJ awarded a significantly higher amount to Employer, Claimant was "severely prejudiced" by the outcome. *Id.*

The Board ultimately affirmed the WCJ, explaining that as an appellate body, its role is "not to reweigh evidence . . . but only to determine whether . . . the WCJ's

findings have sufficient support in the record." Board Op. at 3 (citing *Lehigh County Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995)). According to the Board, the issue of the improper termination of Claimant's Heart and Lung benefits "was not before the WCJ" and the evidentiary record supported the WCJ's decision. Board Op. at 7.[6]

This appeal followed.

## II.    Appeal Issues

On appeal to this Court,[7] Claimant argues that the conversion of his Heart and Lung benefits into WC benefits, without a hearing, violated his due process rights. Claimant further argues that all benefits paid to him should therefore be considered Heart and Lung Act benefits, which are not subject to subrogation. In the alternative, Claimant asserts that if Employer is entitled to any relief, it should be limited to the amount referenced in the 2016 letter from Employer's insurer to Claimant's counsel. Finally, Claimant argues, without explanation, that the Board abused its discretion when it affirmed the WCJ's findings in Employer's favor. Claimant Br. at 10-17.

---

[6]Although the Board ruled that Claimant waived his right to assert these issues, it did briefly address the merits of his arguments. First, the Board acknowledged that Claimant was correct to assert that Heart and Lung benefits cannot be terminated without a hearing. Board Op. at 6 (citing *Williams*, 642 A.2d at 608). However, the Board did not accept as necessarily true that those benefits are never subject to subrogation. *Id.* As for the claim that Employer's recovery is limited by its insurer's 2016 letter, the Board simply pointed out that an employer has "an absolute right to the immediate payment of its lien from a third-party recovery." Board Op. at 8.

[7] When this Court reviews rulings by the Board, its scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of Board procedure, and whether necessary findings of fact were supported by substantial evidence. *Lehigh County Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797, 799 (Pa. 1995).

## III. Discussion

It is well settled that an issue is waived unless it is preserved at every stage of the proceeding. *Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)*, 829 A.2d 730, 735 (Pa. Cmwlth. 2003). In the context of WC matters, appeals are taken on the basis of the record produced before the WCJ. *Dobransky v. Workers' Comp. Appeal Bd. (Cont'l Baking Co.)*, 701 A.2d 597, 599 (Pa. Cmwlth. 1997). Legal issues and facts not presented to the factfinder cannot be asserted on appeal without sacrificing the integrity, efficiency, and orderly administration of the WC scheme of redress for a work-related injury or occupational disease. *DeMarco v. Jones & Laughlin Steel Corp.*, 522 A.2d 26, 29 (Pa. 1987).

In this case, despite numerous opportunities, Claimant failed to participate in the proceedings before the WCJ. Claimant's attempt to rectify the situation via an *ex parte* communication with the WCJ was procedurally faulty and professionally irresponsible. Furthermore, Claimant never offered the Board an explanation for why the issues in his appeal were never raised before the WCJ.[8] Thus, the Board did not abuse its discretion by affirming the WCJ's decision based on the record that was before the WCJ.

---

[8] Claimant is hardly more forthright in his appeal to this Court. In his brief, he maintains that, contrary to the Board's opinion, "Claimant preserved his argument[s] . . . as reflected in the Briefs and submissions to the WCJ." Claimant's Br. at 14. However, Claimant's citations to the record merely refer to the *ex parte* and unfiled brief that Claimant's counsel had sent to the WCJ. In the brief to this Court, counsel argues that, "contrary to the opinion of Commissioner Cummings," the appeal issues had been "raised and preserved" before the WCJ. Claimant Br. at 15. However, in his June 29, 2020 letter to the WCJ, counsel acknowledges that a brief raising those issues "was never filed with [the WCJ's] offices." R.R. at 134. Additionally, in Claimant's brief to this Court, counsel refers to several items in the record to support the claim that the issues had been preserved. Claimant Br. at 14-15 (citing R.R. at 22, 103, 117, 134, 141). One of those items is the unfiled brief that accompanied the June 29, 2020 letter. The rest are citations to Claimant's appeal to the Board rather than to any documents submitted to the WCJ.

7

In review, this Court must determine whether the WCJ's findings of fact were supported by evidence that a reasonable mind might accept as adequate to support the WCJ's decision. The Court may reverse only if it finds that the Board acted in a manifestly unreasonable manner when it affirmed the WCJ's decision. *Payne v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 928 A.2d 377, 379 (Pa. Cmwlth. 2007).

Since Claimant presented no evidence, the WCJ relied on the four exhibits presented by Employer, all of which proved that a third-party settlement with the Claimant existed. Claimant never disputed the authenticity of these records, nor the assertions made therein. Claimant has therefore failed to provide this court with a single reason why it should second-guess the WCJ's broad factfinding authority, or the Board's discretion in affirming his decision. For the foregoing reasons, we affirm the Board.

 

                           _____

                           ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Trasatti,               :
           Petitioner       :
                               :
       v.                    :    No. 698 C.D. 2021
                               :
City of Chester (Workers'       :
Compensation Appeal Board),    :
           Respondent    :

## **O R D E R**

AND NOW, this 1st day of February, 2022, the May 25, 2021, order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
ELLEN CEISLER, Judge